**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 19-cv-00197-REB-NRN

TINA MEHAFFEY,

      Plaintiff,

v.

NAVIENT SOLUTIONS, LLC,

      Defendant.

---

**ORDER**

---

**Blackburn, J.**

      The matters before me are (1) **Plaintiff's Motion for Summary Judgment** [#59],[1] filed September 11, 2020; and (2) **Defendant's Cross-Motion for Summary Judgment and Incorporated Memorandum of Law** [#64], filed October 1, 2020. I grant defendant's motion, deny plaintiff's motion, and dismiss plaintiff's claims herein.

### I.  JURISDICTION

      I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

### II.  STANDARD OF REVIEW

      Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  **FED. R. CIV. P.** 56(a);

---

[1] "[#59]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine factual dispute.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995).  By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense.  *See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).  In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  *Concrete Works*, 36 F.3d at 1518.[2]  All the evidence must be viewed in the light most favorable to the party opposing the motion.  *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999).

---

[2]  However, the fact that the parties have filed cross-motions for summary judgment does not necessarily indicate summary judgment is proper.  *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997); *see also Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

### III.  ANALYSIS

This case arises from a series of phone calls defendant Navient Solutions, LLC ("Navient") made to a telephone number (the "-2283 number") which had been listed by Alexis Whitcomb on a 2014 application for a Federal Stafford Loan.  Although Ms. Whitcomb, as part of her application, gave consent for Navient to contact her about the debt at that number, plaintiff, Tina Mehaffey, to whom the number was reassigned in July 2018, did not.

Between July 11 and November 16, 2018, Navient placed 34 calls to the -2283 number, using a prerecorded message.  Ms. Mehaffey alleges that after receiving approximately five of these calls, she told Navient it had the wrong phone number; Navient counters that its call records do not show Ms. Mehaffey spoke to an agent in the time period she claims this notice was given.  However, the parties do not dispute that on October 2, 2018, Ms. Mehaffey did speak to an agent and relayed that Navient had the wrong number.  Nevertheless, because the agent failed to take all the steps necessary to invalidate the number at that time, Navient placed another twenty phone calls to the -2283 number thereafter.  Claiming these communications violated the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S..C. § 227, Ms. Mehaffey filed this lawsuit.

There is no question that Ms. Mehaffey can prove the essential elements of a claim under the TCPA.  *See Rallo v. Palmer Administrative Services, Inc.*, 2019 WL 1468411 at *2 (D. Colo. Apr. 3, 2019) (essential elements of a TCPA claim are (1) that the defendant made a call; (2) using any automatic telephone dialing system or an

artificial or prerecorded voice; (3) to the plaintiff's cell phone).  Each violation of the statute carries a penalty of either actual damages or $500, whichever is greater, and willful or knowing violations of the statute may incur an additional penalty up to three times the amount of damages.  47 U.S.C. § 227(b)(3)(B).  **See also LaVigne v. First Community Bancshares, Inc.**, 215 F.Supp.3d 1138, 1141 (D.N.M. 2016).  The only real question, therefore, is whether Navient's affirmative defense is viable.[3]  I find that it is.

As originally enacted in 1991, the prohibition of the TCPA on "robocalls" was universal.[4]  **See Barr v. American Association of Political Consultants, Inc.**, – U.S. –, 140 S.Ct. 2335, 2344, 207 L.Ed.2d 784 (2020) [hereinafter "**AAPC**"] ("In plain English, the TCPA prohibited almost all robocalls to cell phones.").  As part of the Bipartisan Budget Act of 2015, however, Congress amended this section to provide an exception for calls "made solely to collect a debt owed to or guaranteed by the United States."  Pub. L. No. 114-74 § 301, 129 Stat. 584, 588 (Nov. 2, 2015).  All the calls which are the subject of this lawsuit were made while the exception was part of the statute.

Navient relied on the government debt exception in support of its prior summary judgment motion, and I agreed that it was entitled to the benefit of the exception.  (**Order** at 2-3 [#53], filed February 13, 2021.)  Nevertheless, I noted that at least two

---

[3]  Navient argues also that it had  the consent of its customer (Ms. Whitcomb) to contact her. Given my resolution of its other arguments, I do not consider this issue.

[4]  Certain limited regulatory exceptions authorized by the Federal Communications Commission are not implicated by the present motions.

federal circuit courts recently had found the government debt exception unconstitutional as a content-based restriction on free speech. Given that the United States Supreme Court was poised imminently to hear arguments in these cases, I denied the parties' cross-motions for summary judgment and stayed the case pending further guidance from the Court. (*Id.* at 4-6.)

Subsequently, the Court issued its relevant decision in ***AAPC***. It agreed with the lower court's determination that the government debt exception constituted a content-based restriction on the First Amendment right of free speech which did not withstand scrutiny. Although six Justices agreed with that conclusion, the decision was deeply fractured. Writing for the plurality, Justice Kavanaugh, joined by Chief Justice Roberts and Justice Alito, found the exception failed under either strict or intermediate scrutiny, but concluded the offending provision could be severed from the remainder of the statute, leaving the TCPA as originally enacted intact. ***AAPC,*** 140 S.Ct. at 2343. Four additional justices concurred in that result. ***See id.*** at 2357 (Sotomayor, J.); ***id.*** at 2363 (Breyer, J., joined by Ginsburg and Kagan, JJ.).[5] Justice Gorsuch, joined by Justice Thomas, agreed the law was unconstitutional, but dissented from the conclusion that severance was the proper remedy in the context of the case. ***Id.*** at 2366 (Gorsuch, J., concurring in part and dissenting in part).

Although obliquely acknowledging the issue, the Court did not decide whether the effect of its ruling should operate only prospectively, so that defendants such as Navient who made calls in reliance on the government debt exception while it was still part of

---

[5] Justice Breyer would have held that the exception survived intermediate scrutiny and was thus constitutional. ***See AAPC***, 140 S.Ct. at 2362-63.

the TCPA could continue to claim the benefit thereof.  In Part III.B.3. of his plurality

opinion, Justice Kavanaugh parenthetically noted that

> although our decision means the end of the government-
> debt exception, no one should be penalized or held liable for
> making robocalls to collect government debt after the
> effective date of the 2015 government-debt exception and
> before the entry of final judgment by the District Court on
> remand in this case, or such date that the lower courts
> determine is appropriate.

*Id.* at 2355 n.12.  Yet only the three justices who signed on to the entirety of Justice

Kavanaugh's opinion concurred in that view; the four Justices who concurred only in the

result did not.  For his part, Justice Gorsuch in dissent pointed out that "a holding that

shields *only* government-debt collection callers from past liability under an admittedly

unconstitutional law would wind up endorsing the very same kind of content

discrimination we say we are seeking to eliminate."  *Id.* at 2366 (Gorsuch, J., concurring

in part and dissenting in part) (emphasis in original).

Obviously, both these statements are dicta, and therefore not binding, even if

either one had garnered the approbation of a majority of the Justices.[6]  *See Cohens v.*

*Virginia*, 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257 (1821) ("general expressions" in an

opinion which "go beyond the case . . . may be respected, but ought not to control the

judgment in a subsequent suit when the very point is presented for decision"); *Obiter*

*dictum*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("A judicial comment made while

---

[6]  If either one of these statements had been included in a majority opinion, the fact that it
constituted dicta would not preclude that statement from having particular force.  For "there is dicta, and
then there is Supreme Court dicta."  *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006), *cert.*
*denied*, 127 s.Ct. 1126 (2007) (citation omitted).  "Supreme Court dicta have a weight that is greater than
ordinary judicial dicta as prophecy of what the court might hold; accordingly we do not blandly shrug them
off because they were not a holding."  *United States v. Montero-Camargo*, 208 F.3d 1122, 1133 n.17 (9th
Cir.), *cert. denied*, 121 S.Ct. 211 (2000) (citation and internal quotation marks omitted)

delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive).").   As neither of these pronouncements was issued in an opinion whose rationale garnered the support of a majority of the Court, the effort to discern which of these opposing statements is more persuasive presents particularly complex and difficult questions.  The effort to resolve those questions has been hampered in this case because neither of the parties apparently appreciated or acknowledged these issues, much less bothered to address them.  I therefore find I must return to first principles.[7]

To begin, I note that judicial decisions apply retroactively.  The Constitution entrusts to the legislative branch the power to make law, **U.S. CONST**. art. I, § 1, while it is "the province and duty of the judicial department to say what the law is," *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803).  Thus "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction;" in other words, the Court's decision reveals "what [the statute] had always meant."  *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-13 & n.12, 114 S.Ct. 1510, 1519 & n.12, 128 L.Ed.2d 274 (1994).  Accordingly, "an unconstitutional statutory amendment is a nullity and void when enacted[.]"  *AAPC*, 140 S.Ct. at 2353 (quoting *Frost v. Corporation Commission of Oklahoma*, 278 U.S. 515, 526-27, 49 S.Ct. 235, 239, 73 L.Ed. 483

---

[7]  My staff attorney will forward the bill for her services to counsel in due time – not that she's bitter.

(1929)) (internal quotation marks omitted).[8]  *See also **Reynoldsville Casket Co. v. Hyde***, 514 U.S. 749, 752, 115 S.Ct. 1745, 1748, 131 L.Ed.2d 820 (1995) ("[W]hen (1) the Court decides a case and applies the (new) legal rule of that case to the parties before it, then (2) it and other courts must treat that same (new) legal rule as 'retroactive,' applying it, for example, to all pending cases, whether or not those cases involve predecision events."); ***Harper v. Virginia Department of Taxation***, 509 U.S. 86, 97, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.").  Because the ***AAPC*** Court found the government debt exception unconstitutional, it is as if that exception had never existed at all.  Without the benefit of the exception, the calls Navient placed to Ms. Mehaffey violated the TCPA.

The next question which naturally arises, and which Justice Kavanaugh's footnote anticipated, concerns how to account for Navient's reliance on the exception which was still part of the statute at the time the calls were made.  On the face of it, Navient's bare reliance would seem to be sufficient in itself to prevent the court from holding it liable for calls which facially were permissible at the time they were placed.  ***See, e.g.***, ***Pinsky v. Duncan***, 79 F.3d 306, 313 (2nd Cir. 1996) ("There is common law

---

[8]  The Supreme Court itself can declare a ruling to apply only prospectively "in an appropriate case" and "in the interest of justice," based on considerations of "the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." ***Linkletter v. Walker***, 381 U.S. 618, 628, 629, 85 S.Ct. 1731, 1737, 1738, 14 L.Ed.2d 601 (1965).  Of course, that was the thrust of footnote 12 of the ***AAPC*** plurality opinion, which does not definitively answer the question before me.

authority that it is objectively reasonable to act on the basis of a statute not yet held invalid."); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 377 F.2d 776, 789 (3rd Cir. 1967) ("In civil cases, . . . it is appropriate to recognize that businessmen must rely upon counsel, who in turn are guided by the existing precedents (and statutes) in making difficult decisions on the effect of the [] laws on specific business conduct."), *rev'd on other grounds*, 88 S.Ct. 2224 (1968).

Despite its intuitive appeal, this argument is misplaced.  Claims of reliance, "often present when prior law is overruled," are "insufficient to deny retroactive application of a new legal rule." *Reynoldsville Casket Co.*, 115 S. Ct. at 1749.  In the civil context, at least, a law may "impose a new duty or liability based on past acts" and that change "is not unlawful solely because it upsets otherwise settled expectations." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16, 96 S.Ct. 2882, 2893, 49 L.Ed.2d 752 (1976). "[W]e can scarcely permit the substantive law [to] shift and spring according to the particular equities of [individual parties'] claims of actual reliance on an old rule and of harm from a retroactive application of the new rule." *Harper*, 113 S. Ct. at 2517 (citation and internal quotation marks omitted).

The analysis is different, however, when a party is facing potential criminal liability for past acts which subsequently have been determined to be unlawful. "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574, 116 S.Ct. 1589, 1598, 134 L.Ed.2d 809

(1996).  Thus, due process prohibits application of an unforseen criminal penalty to

conduct which at the time taken was lawful:

> [A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids.  An ex post facto law has been defined by this Court as one that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action, or that aggravates a crime, or makes it greater than it was, when committed.  If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.  The fundamental principle that the required criminal law must have existed when the conduct in issue occurred, must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures.  If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect.

*Bouie v. City of Columbia*, 378 U.S. 347, 353-54, 84 S.Ct. 1697, 1702-03, 12 L.Ed2d

894 (1964) (internal citations, quotation marks, and footnote omitted).[9]

As "'private fines' intended to punish the defendant and to deter future

wrongdoing," punitive damages are "quasi-criminal" in nature.  *Cooper Industries, Inc.*

*v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432, 121 S.Ct. 1678, 1683, 149

L.Ed.2d 674 (2001).  *See also Juarez v. Menard, Inc.*, 366 F.3d 479, 481 (7th Cir.

---

[9] Indeed, although not required to address the issue on the facts before them, several courts considering the parameters of the *AAPC* decision have noted the potential due process issues implicated by applying it to parties in Navient's position.  *See, e.g.*, *Miles v. Medicredit, Inc.*, – F.Supp.3d –, 2021 WL 1060105 at *3 (E.D. Mo. Mar. 18, 2021); *Stoutt v. Travis Credit Union*, 2021 WL 99636 at *4 n.2 (E.D. Cal. Jan. 12, 2021), *motion to certify appeal granted*, 2021 WL 1143612 (E.D. Cal. Mar. 25, 2021); *Lindenbaum v. Realgy, LLC*, 497 F.Supp.3d 290, 298 (N.D. Ohio 2020), *appeal filed* (No. 20-4252) (6th Cir. Nov. 30, 2020); *Trujillo v. Free Energy Savings Company, LLC*, 2020 WL 8184336 at *4 (C.D. Cal, Nov. 20, 2020).

2004); *Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 282 (2ⁿᵈ Cir.), *cert. dismissed*, 111 S.Ct. 27 (1990).  For this reason, "[r]etroactive imposition of punitive damages would raise a serious constitutional question."  *Landgraf v. USI Film Products*, 511 U.S. 244, 281, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994).  *See also De Veau v. Braisted*, 363 U.S. 144, 160, 80 S.Ct. 1146, 1155, 4 L.Ed.2d 1109 (1960) ("The mark of an *ex post facto* law is the imposition of what can fairly be designated punishment for past acts").  The question thus is whether the damages available under the TCPA can be said to constitute punitive damages.[10]

Because the issue is easier to resolve, I look first to the TCPA's treble damages provision.  "The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers."  *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981).  *See also Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 972 (2ⁿᵈ Cir. 1985) (retroactive application of treble damages provisions of Trademark Counterfeiting Act of 1984 "would present a potential *ex post facto* problem").  Granted, treble damages provisions exist along a continuum between punitive and remedial.  *See PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401, 405, 123 S.Ct. 1531, 1535, 155 L.Ed.2d 578 (2003).  Thus, for example, because treble damages under section 4 of the Clayton Act "make[] awards available only to injured

---

[10]   The fact that the TCPA is a civil statute is not determinative.  *See Giaccio v. State of Pennsylvania*, 382 U.S. 399, 402, 86 S.Ct. 518, 520, 15 L.Ed.2d 447 (1966) ("Both liberty and property are specifically protected by the Fourteenth Amendment against any state deprivation which does not meet the standards of due process, and this protection is not to be avoided by the simple label a State chooses to fasten upon its conduct or its statute.").

parties, and measure[] the awards by a multiple of the injury actually proved," they have been found to be "designed primarily as a remedy." ***Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.***, 429 U.S. 477, 485-86, 97 S.Ct. 690, 696, 50 L.Ed.2d 701 (1977).

Those considerations do not pertain under the TCPA.  Aside from the fact that such treble damages are not tied to any notion of compensation for actual harm a plaintiff has suffered, they are available only on proof of willful or knowing violation of the law, which indicates an intent to punish such violations beyond the scope of what is ordinarily permitted under the statute.  47 U.S.C. § 227(b)(3)(B).  I thus conclude the treble damages provisions of the TCPA are the functional equivalent of punitive damages.  ***See Franklin v. Navient, Inc.***, 2021 WL 1535575 at *6 (D. Del. April 19, 2021).

Obviously, Navient could not have known it was violating the TCPA, let alone willfully have done so, when, at the time it placed these phone calls in 2018, the government debt exception was part of the statute.  Yet where quasi-criminal punitive penalties are sought, due process demands a party have notice that its conduct will subject it to liability.[11] ***See Bouie*** 84 S.Ct. at 1703.  Accordingly, unless the unconstitutionality of the government debt exception was foreseeable, the imposition of treble damages on Navient would violate due process.

I cannot find that Navient should have foreseen the change in the law which

---

[11]  Moreover, awarding treble damages retrospectively would not serve the legitimate purposes of punitive damages to deter conduct or affix appropriate blame.  ***See Usery***, 96 S.Ct. at 2893 (Court would "hesitate to approve the retrospective imposition of liability on any theory of deterrence or blameworthiness") (internal citations omitted).

*AAPC* wrought.  Because Congress has "not just the right but the duty to make its own informed judgment on the meaning and force of the Constitution," its laws are entitled to a presumption of validity, *City of Boerne v. Flores*, 521 U.S. 507, 535, 117 S.Ct. 2157, 2171, 138 L.Ed.2d 624 (1997).  *See also United States ex rel. Clark v. Anderson*, 502 F.2d 1080, 1082 (3rd Cir. 1974) (unconstitutional statute does not afford "notice of its own invalidity").  Navient was entitled to the benefit of this presumption prior to the Supreme Court's decision in *AAPC*.  It could not have foreseen, and was not required to foresee, that the exception would be found unconstitutional.[12]  Retroactively applying *AAPC* to Ms. Mehaffey's request for treble damages would deprive Navient of the due process to which it is entitled before being subjected to an award of quasi-criminal damages.  I thus find and conclude that Navient is entitled to summary judgment as to Ms. Mehaffey's request for treble damages.

This determination still leaves the question whether these same precepts apply

---

[12]  I roundly reject Ms. Mehaffey's wholly unsupported suggestion that Navient should have known the government debt exception was on shaky ground based on a handful of earlier district court cases questioning its constitutionality.  (*See* **Plf. Motion** at 15-16 [#59, filed September 11, 2020; **Plf. Resp. Br.** at 15 n.9 [#66], filed October 15, 2020.)  Assuming *arguendo* that anything short of a definitive pronouncement from the United States Supreme Court could constitute adequate notice for purposes of due process, none of the cases Ms. Mehaffey cites has anything like the kind of precedential force with which she imbues them.  In four of the five allegedly consequential cases, although the district courts found the government debt exception to be a content-based restriction on speech, they nevertheless concluded it survived strict scrutiny.  *Gallion v. Charter Communications Inc.*, 287 F.Supp.3d 920, 925 (C.D. Cal. 2018), *aff'd*, 772 Fed. Appx. 604 (9th Cir. 2019); *Mejia v. Time Warner Cable Inc.*, 2017 WL 3278926 at *17 (S.D.N.Y. Aug. 1, 2017); *Holt v. Facebook, Inc.*, 240 F.Supp.3d 1021, 1032 (N.D. Cal. 2017), *appeal filed* (No. 17-80086) (9th Cir. May 12, 2017); *Brickman v. Facebook, Inc.*, 230 F.Supp.3d 1036, 1045-49 (N.D. Cal. 2017), *appeal filed* (No. 17-80080) (9th Cir. May 9, 2017).  In the fifth case, the court merely assumed *arguendo* that the exception constituted a content-based distinction that could not survive strict scrutiny.  *Sliwa v. Bright House Networks, LLC*, 2018 WL 1531913 at *5 (M.D. Fla. Mar. 29, 2018).

to Ms. Mehaffey's request for statutory damages of $500 per violation.[13]  I find they do.

The Tenth Circuit, in the context of determining whether an insurer had a duty to defend

its insured from a lawsuit seeking statutory damages under the TCPA, held that

""penalties in excess of actual damage are penal." *Ace American Insurance Co. v.*

*Dish Network, LLC*, 883 F.3d 881, 891 (10th Cir. 2018) (citation and internal quotation

marks omitted).  In addition, another court in this district previously found the TCPA to

be a penal statute in determining whether the right to assign a claim thereunder was

permissible.  *US Fax Law Center, Inc. v. iHire, Inc*., 362 F.Supp.2d 1248, 1253 (D.

Colo. 2005).

 Admittedly, this view may reflect a minority position.  *See Penzer v.*

*Transportation Ins. Co.*, 545 F.3d 1303, 1310 (11th Cir. 2008) ("[M]ost courts have

found that the TCPA is not a penal statute;" citing cases); *Melrose Hotel Co. v. St.*

*Paul Fire & Marine Insurance Co.*, 432 F.Supp.2d 488, 509 n.10 (E.D. Pa. 2006)

("Most courts that have considered the issue have held that the TCPA is not a penal

statute;" citing cases), *aff'd*, 503 F.3d 339 (3rd Cir. 2007).  Nevertheless, lacking clearer

or more persuasive authority – and in the complete absence of even a recognition of the

salient issues, let alone any argument, from the parties – I conclude I am bound to

adhere to the pronouncements of  the Tenth Circuit and find the statutory damages

provision of the TCPA constitutes a penalty.  *See Franklin*, 2021 WL 1535575 at *6

(finding both statutory and treble damages under the TCPA to constitute quasi-criminal

---

[13]  Ms. Mehaffey's complaint contains no request for actual damages, and despite reference to her deposition testimony that she found the calls "aggravating" to the point where she "didn't even want to answer the phone anymore" (**Plf. Motion App.**, Exh. A at 30), she does not request or attempt to substantiate any actual damages in her summary judgment motion either.

punitive damages and denying retroactive imposition of same as a violation of due process).

Thus, as with treble damages, because due process forbids the imposition of quasi-criminal penalties on a party who lacked notice that its conduct would subject it to liability, Navient is entitled to summary judgment on this aspect of Ms. Mehaffey's claim as well.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Plaintiff's Motion for Summary Judgment** [#59], filed September 11, 2020, is denied;

2.  That **Defendant's Cross-Motion for Summary Judgment and Incorporated Memorandum of Law** [#64], filed October 1, 2020, is granted;

3.  That the claims of the plaintiff are dismissed with prejudice;

4.  That judgment with prejudice shall enter on behalf of defendant, Navient Solutions, LLC, and against plaintiff, Tina Mehaffey, all claims for relief and causes of action asserted herein; and

5.  That this case is closed.

Dated June 17, 2021, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

15